**No. 25-2366**

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

MAYA PARIZER; ADIN GESS; NOACH NEWMAN; NATALIE
SANANDAJI; YONI DILLER; DAVID BROMBERG; LIOR BAR OR;
ARIEL EIN-GAL; HAGAR ALMOG,

*Plaintiffs-Appellants*,

v.

AJP EDUCATIONAL FOUNDATION INC., D/B/A AMERICAN
MUSLIMS FOR PALESTINE; NATIONAL STUDENTS FOR
JUSTICE IN PALESTINE; WESPAC FOUNDATION; HATEM
BAZIAN; OSAMA ABUIRSHAID; TAHER HERZALLAH; ZAREFAH
BAROUD

*Defendants - Appellees*.

_____

On Appeal from the United States District Court for
the Eastern District of Virginia

Case No. 1:24-cv-00724
The Honorable Rossie David Alston, Jr., District Judge

_____

**RESPONSE BRIEF OF APPELLEES**

_____

**\*Counsel Continued on Inside Cover**

Felicity Ann McGrath
James T. Hittinger
Patrick J. Crowley
Kiernan Trebach LLP
1233 20th St NW Suite 800
Washington, DC 20036
Tel: 202-712-7000
Fax: 202-712-7100
fmcgrath@kiernantrebach.com
jhittinger@kiernantrebach.com
pcrowley@kiernantrebach.com
*Counsel for WESPAC Foundation, Inc.*

Ben Elson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070 Fax: 773-235-6699
ben@peopleslawoffice.com
*Counsel for Taher Herzallah and
Zarefah Baroud*

George R.A. Doumar
Doumar Martin PLLC
1530 Wilson Boulevard, Suite
1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com
          and
Christina A. Jump
Jump Start Legal Justice Center PLLC
100 N. Central Expy. Suite 537
Richardson, Texas 75080
Tel: (972) 992-5060
cjump@jump-start-legal.com
*Counsel for Osama Abuirshaid, Hatem
Bazian and AJP Educational
Foundation Inc. d/b/a American
Muslims for Palestine*

Abdel-Rahman Hamed
Hamed PLLC
1215 31st St NW #25085
Washington, DC 20027
202-888-8846
advocates@hamedlaw.com
*Counsel for National Students for
Justice in Palestine*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2366__     Caption: __Maya Parizer, et al v. AJP Educational Foundation, Inc. et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__AJP Educational Foundation, Inc., Osama Abuirshaid, and Hatem Bazian__
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?  ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ George R. A. Doumar                    Date:            12/1/2025

Counsel for: AJP Educational Foundation, Inc.,

- 2 -

**Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2366__        Caption: __Maya Parizer, et al. v. AJP Educational Foundation, Inc., et. al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__National Students for Justice in PALESTINE__
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                                - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Abdel-Rahman Hamed                    Date:          01/06/2026

Counsel for: Nat'l Students for Justice in Palestine

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-2366__        Caption: Maya Parizer v. AJP Educational Foundation Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

WESPAC Foundation
(name of party/amicus)


who is _____an appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                     ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                           ☐YES ☑NO
      If yes, identify all such owners:


12/01/2019 SCC                          - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Patrick J. Crowley                     Date: 11/26/2025

Counsel for: WESPAC Foundation

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2366__          Caption: __Parizer et al v AJP EDUCATIONAL FOUNDATION INC. et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__TAHER HERZALLAH; ZAREFAH BAROUD__
(name of party/amicus)


 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                  ☐YES ☑NO
        If yes, identify all such owners:



12/01/2019 SCC                          - 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Christopher E. Brown        Date: 11/26/25

Counsel for: TAHER HERZALLAH; ZAREFAH BA

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ................................................................................... 1

STATEMENT OF ISSUES ....................................................................... 2

STATEMENT OF THE CASE.................................................................... 3

    Factual Background .......................................................................... 3

        AJP Educational Foundation, Inc., d/b/a American Muslims for Palestine ........................................................................ 4

        National Students for Justice in Palestine ............................... 7

        WESPAC Foundation, Inc. ................................................... 9

        Dr. Osama Abuirshaid............................................................ 13

        Dr. Hatem Bazian ................................................................. 14

        Taher Herzallah .................................................................... 15

        Zarefah Baroud..................................................................... 15

    Procedural History ......................................................................... 17

SUMMARY OF ARGUMENT .................................................................. 17

STANDARD OF REVIEW ....................................................................... 19

ARGUMENT ....................................................................................... 20

    I.     THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE U.S. PLAINTIFFS DID NOT STATE PLAUSIBLE ATA CLAIMS AGAINST DEFENDANTS ................ 20

        A.    The *Taamneh* ATA Aiding-and-Abetting Standard ................. 22

        B.    Plaintiffs' Allegations Do Not Satisfy the *Taamneh* Standard ...................................................................... 24

            1.    Plaintiffs fail to factually plead the requisite knowledge........................................................... 24

i

2.    Plaintiffs cannot plausibly establish "substantial" assistance .............................................................28

3.    Plaintiffs' "Near-Common Enterprise" Theory argument fails ..................................................................35

II.    THE DISTRICT COURT CORRECTLY DISMISSED THE ISRAELI PLAINTIFFS' ATS CLAIMS ON JURISDICTIONAL GROUNDS, AND AFFIRMANCE WOULD LIKEWISE BE APPROPRIATE ALTERNATIVELY UNDER RULE 12(b)(6) AS PLAINTIFFS DID NOT STATE A PLAUSIBLE INTERNATIONAL LAW AIDING-AND-ABETTING CLAIM ............................................................................39

A.    The District Court Properly Held That It Lacks Subject-Matter Jurisdiction Over the Israeli Plaintiffs' Claims Under the ATS ..........................................39

1.    The allegations in the Amended Complaint fail to displace the presumption against extraterritoriality .................................................40

2.    Plaintiffs failed to assert a viable international norm violation ..................................................47

3.    The Court should defer to Congress rather than exercise judicial discretion to create a cause of action ............................................................49

B.    Plaintiffs Did Not State A Plausible International Law Aiding-and-Abetting Claim Via the ATS ................................52

CONCLUSION ............................................................................................53

CERTIFICATE OF COMPLIANCE ...........................................................56

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Adhikari v. Kellogg Brown & Root, Inc.*,
  845 F.3d 184 (5th Cir. 2017) ...................................................... 44, 45, 46

*Al Shimari v. CACI Premier Tech., Inc.*,
  684 F. Supp. 3d 481 (E.D. Va. 2023) ......................................... 42, 43, 46

*Al Shimari v. CACI Premier Tech., Inc.*,
  758 F.3d 516 (4th Cir. 2014) ............................................................... 40

*Am. Ass'n of Univ. Professors v. Rubio*,
  780 F. Supp. 3d 350 (D. Mass. 2025) ................................................... 1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 19, 20

*Aziz v. Alcolac, Inc.*,
  658 F.3d 388 (4th Cir. 2011) ............................................................... 52

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 19

*Bernhart v. Islamic Republic of Iran*,
  47 F.4th 856 (D.C. Cir. 2022) ............................................................. 32

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................... 26

*Davis v. Lafler*,
  658 F.3d 525 (6th Cir. 2011) ............................................................... 25

*Demetres v. E. W. Constr., Inc.*,
  776 F.3d 271 (4th Cir. 2015) ............................................................... 19

*Doe v. Drummond Co.*,
  782 F.3d 576 (11th Cir. 2015) ............................................................. 44

*Est. of Alvarez v. Rockefeller Found.*,
  96 F.4th 686 (4th Cir. 2024) ............................................................... 52

*Francis v. Giacomelli*,
  588 F.3d 186 (4th Cir. 2009) ...................................................... 19, 20

iii

*Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*,
No. 2:24-cv-00985-APG-MDC, 2025 U.S. Dist. LEXIS 84645
(D. Nev. May 5, 2025).................................................................. 1, 30, 31

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983)......................................... 22, 33, 37, 38

*Jara v. Núñez*,
878 F.3d 1268 (11th Cir. 2018) ................................................ 41, 47

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ................................................................. *passim*

*Kayemeth Leisrael-Jewish National Fund v. Education for a Just Peace*,
66 F.4th 1007 (D.C. Cir. 2023) ........................................... 31, 32

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013) ........................................................... 41, 43

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 111 (2d Cir. 2010) .................................................. 48-49

*Manhart v. WESPAC Found., Inc.*,
No. 24-cv-08209, 2025 U.S. Dist. LEXIS 152019 (N.D. Ill. Aug. 7, 2025) .........1

*Nestle USA, Inc. v. Doe*,
593 U.S. 628 (2021) ................................................................. *passim*

*Nye & Nissen v. United States*,
336 U.S. 613 (1949) ....................................................................35

*RJR Nabisco v. Eur. Cmty.*,
579 U.S. 325 (2016) ....................................................................40

*Rosemond v. United States*,
572 U.S. 65 (2014) ......................................................................23

*Siegel v. HSBC N. Am. Holdings, Inc.*,
933 F.3d 217 (2d Cir. 2019) ........................................................32

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) ..................................................... 47, 48, 50

*State v. Holcomb*,
268 P.3d 684 (Or. Ct. App. 2011) ...............................................25

*Turner v. Thomas*,
930 F.3d 640 (4th Cir. 2019) .......................................................... 19, 20

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) ...................................................................... *passim*

*Weinberg v. Nat'l Students for Just. in Pal.*,
No. 2:25-cv-03714-MCS-JC, 2026 U.S. Dist. LEXIS 10380
(C.D. Cal. Jan. 20, 2026) ....................................................................1

*Xia v. Tillerson*,
865 F.3d 643 (D.C. Cir. 2017).............................................................30

## Statutes & Other Authorities:

U.S. Const., Amend. I ................................................................ 16, 32

18 U.S.C. § 2333 ......................................................................... 3, 20

18 U.S.C. § 2333(a) ..........................................................................20

18 U.S.C. § 2333(d)(2).......................................................... 20, 27, 38

28 U.S.C. § 1350......................................................................... 3, 39, 51

*About WESPAC*, WESPAC FOUNDATION (last visited Jan. 7, 2026)......................10

Fed. R. Civ. P. 12(b)(1).............................................................. 2, 17, 19

Fed. R. Civ. P. 12(b)(2).....................................................................17

Fed. R. Civ. P. 12(b)(6)................................................................ *passim*

Fed. R. Civ. P. 12(h)(3).....................................................................19

ICSFT, art. 2.1, Dec. 9, 1999, 16 U.S. 49, 2178 U.N.T.S. 197 ..............................48

**INTRODUCTION**

Defendants/Appellees are a diverse group of academics, non-profits, and U.S. college students, advocating peacefully in different ways for one side of a contentious and complicated issue of public importance, both culturally and politically. This lawsuit is a blatant effort to chill Defendants' First Amendment rights to protest, peacefully assemble, donate, and speak out publicly in opposition to U.S. foreign policy matters and involvement in conflicts abroad and to a foreign country's military aggression and oppressive practices that have adversely impacted hundreds of thousands of innocent noncombatants. Plaintiffs/Appellants endeavor here, just as in similar litigation nationwide,[1] to exhaust the resources of organizations, academics, and students they disagree with in order to suppress legitimate discourse rather than engage in an exchange of viewpoints in the public square. Plaintiffs allege no participation by any Defendant in the October 7, 2023 attacks, just purported "propaganda" activities after October 7.[2]

---

[1] *Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, No. 2:24-cv-00985-APG-MDC, 2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025); *Manhart v. WESPAC Found., Inc.*, No. 24-cv-08209, 2025 U.S. Dist. LEXIS 152019 (N.D. Ill. Aug. 7, 2025); *Weinberg v. Nat'l Students for Just. in Pal.*, No. 2:25-cv-03714-MCS-JC, 2026 U.S. Dist. LEXIS 10380 (C.D. Cal. Jan. 20, 2026).

[2] *Accord Am. Ass'n of Univ. Professors v. Rubio*, 780 F. Supp. 3d 350 (D. Mass. 2025) (recognizing that punishing statements in support of Palestine or against Israel-protected speech-could violate the First Amendment).

1

As the district court held, Plaintiffs' alleged experiences and related damages, all of which occurred abroad, do not stem from any plausible violations of U.S. law attributable to *these* Defendants. The district court correctly concluded that the facts alleged in Plaintiffs' Amended Complaint do not plausibly support a claim for relief under the Anti-Terrorism Act ("ATA"), and that the Court lacks jurisdiction over the Israeli Plaintiffs' claims under the Alien Tort Statute ("ATS"). For the reasons discussed below, this Court should affirm the district court's well-reasoned Memorandum Opinion and Order granting Defendants' Motions to Dismiss.

## STATEMENT OF ISSUES

I.      Did the U.S. Plaintiffs allege sufficient non-conclusory facts under Rule 12(b)(6) in furtherance of their ATA aiding-and-abetting claims to plausibly demonstrate Defendants each consciously and culpably participated in the October 7, 2023 attacks that allegedly injured Plaintiffs through knowing and substantial assistance to Hamas so as to help make the attacks succeed?

II.     Did the Israeli Plaintiffs adequately plead, under Rule 12(b)(1) and the ATS, sufficient U.S.-based conduct proximately causing their alleged injuries in Israel to overcome the presumption against extraterritoriality, establish a universally recognized international law violation, and warrant judicial recognition of a cause of action, and—under Rule 12(b)(6)—plausibly state an international aiding-and-abetting claim against each Defendant?

2

## STATEMENT OF THE CASE

### Factual Background

Plaintiffs filed suit against three organizations—AJP Educational Foundation, Inc., d/b/a American Muslims for Palestine ("AMP"), WESPAC Foundation, Inc. ("WESPAC"), and National Students for Justice in Palestine ("NSJP")—and four individual defendants: Hatem Bazian ("Bazian"), Osama Abuirshaid ("Abuirshaid"), Taher Herzallah ("Herzallah") and Zarefah Baroud ("Baroud") (collectively "Defendants"). Plaintiffs' factual allegations against each Defendant specifically are described in the subsections below.[3]

The Complaint asserts two counts against all Defendants: one brought by seven U.S. citizen Plaintiffs under the ATA, 18 U.S.C. § 2333, and one brought by two Israeli citizen Plaintiffs under the ATS, 28 U.S.C. § 1350. All are alleged to be victims in some capacity of the Hamas terrorist attack in Israel on October 7, 2023. JA032-034. And while all of the alleged injuries to Plaintiffs occurred abroad on October 7, the majority of the allegations concerning Defendants' conduct detail

---

[3]Throughout the Amended Complaint, Plaintiffs impermissibly merge the seven named Defendants by collectively referring to some (or all) as "Defendants" (generally) in the context of specific allegations despite each being separate entities and individuals with different alleged factual roles. *See generally* JA029-143. This inconsistent and confusing pleading style in a case involving multiple defendants does not meet the Rule 8 notice standards: the Court cannot speculate as to the conduct of any one party, and Defendants equally must be able to identify all the specific allegations lodged against each of them.

3

post-October 7 activity in the United States, such as college student protests allegedly organized by NSJP. The October 7 attack was heinous, but it was carried out by Hamas—not Defendants. Indeed, none of Plaintiffs' allegations plausibly establish any prior knowledge of or participation by Defendants in the October 7 attack.

<u>AJP Educational Foundation, Inc., d/b/a American Muslims for Palestine</u>

AMP operates wholly within the United States as a 501(c)(3) non-profit organization, working to advance Palestinian rights and awareness of Palestine's rich history and culture within the United States. JA035.  Since its creation in 2006, AMP has continuously worked toward that stated mission. AMP does not accept donations from outside of the United States, nor does it send money to any party outside of the United States. JA051-052.

The bulk of Appellants' allegations against AMP detail post-October 7 college student protests – lawful expressions of free speech – and conferences within the United States. AMP organized and supported some of the efforts within the United States to support Palestinian rights and raise awareness of the plight of Palestinians with actions including conferences, marches, and boycotts. JA078, JA081. Plaintiffs allege that AMP "provid[es] invaluable communication services that Hamas cannot receive or pay for elsewhere in the United States." JA076. They assert that "Defendants" generally, "launch objectively false propaganda and

4

terrorize institutions to sway global public opinion against Israel and towards Hamas." JA058. Appellants make conclusory and speculative allegations against AMP that "[e]xactly as AMP intended, NSJP acted as Hamas's loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States." JA060. Appellants also devote ten paragraphs to describing an "NSJP "Toolkit," described below, but fail to connect it to AMP in any non-conclusory way. JA060-063. None of the allegations assert any knowledge or participation by AMP in the October 7 attacks; they instead only raise general allegations that AMP must have violated the ATA and ATS because it supports advocacy for Palestinians. JA100-105.

Plaintiffs further make multiple statements in their Brief that contradict the allegations in their own Amended Complaint. They refer to an ongoing lawsuit brought in the Northern District of Illinois which alleges claims of alter ego and successor liability against AMP, but far overstate the status and blur the correlation, if any, between that lawsuit and Plaintiffs' allegations in this matter. *See* Brief at 11 (making the conclusory assertion that AMP "is" the "resurrected alter ego of IAP"), 34-37 (asserting that the *Boim v. American Muslims for Palestine* litigation in federal court on Chicago, which remains ongoing, "successfully alleged that AMP was an alter ego of IAP" and "sufficiently stated a viable ATA aiding-and-abetting claim against AMP"), 39-40 (asserting that the Amended Complaint "expressly identifies"

5

liability against AMP but also acknowledging the allegation only parenthetically as "(and Defendant AMP)"), and 42-43 (inaccurately paraphrasing the Amended Complaint as connecting "Defendants" as "knowing and material participants not only in the October 7 massacre itself" as well as a vague "mass terrorist enterprise generally"); *compare* JA035 (alleging "AMP is accused of being the successor entity to" IAP and citing to the *Boim* lawsuit while acknowledging "[t]hat matter is ongoing" with neither party able to rightly claim "success" at this stage),  JA041 (alleging connections between AMP and other entities that were either held civilly— but not criminally—liable, designated, or that otherwise "dissolved"), JA042 (identifying only one of AMP's two founders in Appellants' chart as its founders, and referencing "speaker and fundraiser" as well as "brother and business partner" and "in-law" to attempt to draw connections), JA043 (acknowledging an identified non-party individual as "not being" an AMP Board member), JA049 (describing AMP as "purposeful when following the corporate form" and holding conferences "which featured a 'Youth Program'" and "included separate programming *specifically for students*") (emphasis in original).  Having relatives and business partners, holding conferences—even those "specifically for students" and youth, associating with members of previously dissolved entities, and even "speaking" all constitute First Amendment-protected activities lawfully conducted within the United States, and do not equate to "expressly identifying" AMP (or for that matter,

6

other defendants) as "knowing and material participants" in the actions Plaintiffs allege caused their harm.

### National Students for Justice in Palestine

Defendant NSJP is a decentralized coalition of student activists across American universities engaged in lawful advocacy for Palestinian human rights and opposition to genocide. JA054. NSJP operates not as a formal corporate entity with centralized control, but as a loose network providing educational resources and organizing guidance to independent campus chapters—Students for Justice in Palestine (SJP)—that make their own decisions about programming, messaging, and tactics. JA054. NSJP has no formal corporate structure, no principal place of business, and no employees in Virginia or anywhere else. JA035, JA054.

The bulk of Plaintiffs' allegations consist of baseless conspiracy theories attempting to transform constitutionally protected student speech into terrorism. Plaintiffs characterize lawful campus protests, teach-ins, and educational programming as "domestic terrorism" and "material support" for Hamas. JA060-073. These inflammatory allegations rest on guilt-by-association, distortion of protected political speech, and the offensive premise that any student declaring solidarity with Palestinians must be doing so "from, by, and for Hamas." JA060.

Plaintiffs claim, without support, that NSJP "was founded by American Muslims for Palestine (AMP) to serve as a branch of the organization, and remains

controlled by AMP." JA054, JA060-061. Plaintiffs construct an elaborate spider chart attempting to tie NSJP—through AMP and alleged predecessor organizations—to Hamas, yet fail to allege any fact plausibly showing NSJP is directed or controlled by AMP, let alone Hamas. JA054. Plaintiffs themselves acknowledge that NSJP "has no formal corporate structure of its own." JA054.

Central to Plaintiffs' case is the so-called "NSJP Toolkit," released on October 8, 2023—one day after the events that allegedly harmed Plaintiffs. JA060-063. Plaintiffs characterize this toolkit as an "action-oriented instruction manual created by NSJP, with Hamas's instructions and mission." JA064. The toolkit encourages quintessentially protected First Amendment activities: demonstrations, teach-ins, educational materials about Palestinian history, and university divestment campaigns opposing ongoing atrocities.

Plaintiffs construct a fantastical theory around the toolkit's timing and content, suggesting conscientious students responding rapidly to breaking news is somehow sinister rather than predictable. JA060-061. Plaintiffs claim the toolkit's use of terms like "resistance" and "liberation" constitutes proof of coordination with Hamas. JA061-062. The toolkit's inclusion of a simple paraglider graphic becomes, in Plaintiffs' fevered imagination, proof that NSJP had advance knowledge of the October 7 attacks. JA063. The Amended Complaint notes that Hamas operatives used paragliders during the attack and that "neither Hamas, nor any other terrorist

8

organization, had ever used paragliders to commit a terrorist attack until October 7—just one day before NSJP provided the graphics." JA063.

Plaintiffs point to Hamas officials expressing appreciation for global demonstrators calling for an end to the genocide, and claim this proves NSJP acted at Hamas's direction. JA077, JA096, JA102, JA107-108, JA129, JA150. The Amended Complaint catalogs campus protests at universities nationwide, describing these events as "violence," "terror," "riots," "domestic terrorism." JA065-073. Yet the actual conduct described consists primarily of chanting slogans, holding signs, participating in sit-ins, walking out of events, and in isolated instances, physical altercations or vandalism for which individuals faced criminal charges through appropriate legal channels. JA065-073.

Nowhere in the Amended Complaint do Plaintiffs allege that NSJP or its members had any advance knowledge of the October 7 attacks, participated in planning them, provided weapons or funding for them, or engaged in any conduct that directly (or indirectly) facilitated the violence that harmed Plaintiffs.

<u>WESPAC Foundation, Inc.</u>

WESPAC is a 501(c)(3) non-profit, JA035, that has been a force for progressive social change since 1974, supporting the exercise of free speech and

9

peaceful protests in the United States.[4] As a 501(c)(3), WESPAC receives and administers donations and grants, keeping a percentage of the donations it receives and remits "the rest to the groups that it fiscally sponsors." JA052-053. According to Plaintiffs, "the IRS stipulates that fiscal sponsors must retain 'control and discretion over use of the funds.'" JA053. Since "at least 2016," WESPAC was a fiscal sponsor of NSJP, JA052-053, JA101, a student-led organization founded in 2010 that oversees and coordinates with hundreds of individual and independent SJP chapters sponsored by universities across the country, JA030, JA035, JA054, many of which organized peaceful demonstrations and encampments on college campuses as a form of protest against Israel's military actions in Gaza. As the fiscal sponsor of NSJP, Plaintiffs allege that "WESPAC [was] responsible for how NSJP utilizes the funds it receives from WESPAC—which includes ensuring that the funds are used for charitable purposes." JA053.

Plaintiffs' 79-page Complaint only mentions WESPAC thirty-two times. The majority of references to WESPAC begin with a conclusory allegation concerning NSJP and AMP providing "propaganda" services in the U.S. to the alleged benefit of Hamas, after which Plaintiffs tack on "funded by WESPAC" at the end. *See* JA031, JA035, JA052-055, JA064, JA076, JA099, JA101-102. Essentially,

---

[4]*See About WESPAC*, WESPAC FOUNDATION (last visited Jan. 7, 2026), https://wespac.org/2013/06/11/about-wespac/.

Plaintiffs allege that WESPAC funded this purported propaganda "operation" allegedly run by NSJP and AMP through charitable donations to NSJP as NSJP's fiscal sponsor.[5] *See* JA031, JA035, JA052-055, JA064, JA076, JA099, JA101-102. And out of the nine exhibits attached to the Amended Complaint, only one (Ex. I) briefly references WESPAC, which relates to a political congressional inquiry into student protests on college campuses where WESPAC is listed among many other highly regarded human rights organizations like the Bill & Melinda Gates Foundation. *See generally* JA108-143.

Plaintiffs' Complaint alleges that on October 8, AMP and NSJP, funded by WESPAC, disseminated the Day of Resistance "Toolkit" to students across more than 300 American college campuses and on the internet. JA031, JA060. Plaintiffs ask this Court to draw the unsupported and unreasonable inference that all Defendants knew about the attack because, the following day on October 8, 2023, the Toolkit included a clip-art style graphic of a paraglider. Regardless, Plaintiffs do not allege that WESPAC had any knowledge of the Toolkit and its contents before

---

[5] To the extent Plaintiffs speculate that WESPAC was somehow created by NSJP or AMP (or Hamas even) as a "shell institution" for the purpose of accepting and distributing donations on behalf of NSJP, the allegations in the Amended Complaint and judicially noticeable facts offer an easy rebuttal. First, the Complaint alleges no specific association between AMP and WESPAC. Second, Plaintiffs allege that NSJP was founded in 2010. JA030, JA035, JA054. WESPAC was founded in 1974, 13 years before Hamas even existed, JA036, and 36 years before NSJP existed. The Complaint alleges that WESPAC has only served as NSJP's fiscal sponsor since 2016 with no prior association. JA053, JA101.

the October 7 attack (or afterwards). Plaintiffs assert that the Toolkit is "an action-oriented instruction manual created by NSJP, with Hamas's instructions and mission, AMP's control and assistance, and WESPAC's funding." JA064. The Amended Complaint further alleges that "AMP and NSJP enacted the NSJP Toolkit as written and beset their army of agitators on American streets and college campuses." JA031. According to Plaintiffs, starting on October 8, 2023 and afterwards, "through threats, violence, calls for 'globalizing' the Intifada, and illegally occupying college campuses across the country, AMP and NSJP have instigated a mass culture of fear, threats, violence, and overt hatred to intimidate politicians and institutions to 'force' American institutions to bend to Hamas's will." JA031-032.

Plaintiffs claim these post-October 7 actions to be knowing and substantial assistance to the Hamas acts of terror that injured them. The allegations described above constitute the full extent of WESPAC's alleged involvement in the Amended Complaint. Plaintiffs do **not** allege that (a) WESPAC ever provided any funds to Hamas; (b) that NSJP ever provided any funds to Hamas (let alone that NSJP provided the money received from WESPAC); (c) that WESPAC provided funds to NSJP with knowledge that NSJP would then provide those same funds to Hamas; or (d) that WESPAC provided funds to NSJP with an awareness that NSJP had a closely intertwined connection with Hamas's illegal terrorist activities.

12

<u>Dr. Osama Abuirshaid</u>

Dr. Osama Abuirshaid currently serves on AMP's Board of Directors and as its Executive Director. JA045. A scholar and academic who researches issues of Middle Eastern affairs and American foreign policy, Dr. Abuirshaid completed his Ph.D. thesis on "The Dialectic of Religion and Politics in Hamas' Thought and Practice," for which he relied primarily on historical records and interviews done by third parties. *Id*. (citing Ossama Abuirshaid, The Dialectics of Religion and Politics in Hamas' Thought and Practice (March 22, 2013) (Ph.D. Thesis, Loughboro University)).[6] He also travels extensively, speaking at events around the world on his areas of expertise. JA045, JA046.

Plaintiffs do not allege that Dr. Abuirshaid knew about, planned, or participated in the October 7, 2023 attacks. Instead, they allege generally that Dr. Abuirshaid "publicly supports Hamas and the Muslim Brotherhood and frequently promote [sic] Hamas and its affiliates' terrorist goals in Arab media." JA046. They further conclude without supporting factual allegations that "[t]here is no indication that AMP, NSJP, or the individuals affiliated with them (including Bazian and Abuirshaid) ever ceased providing material support to Hamas," and "AMP, NSJP,

---

[6] Dr. Abuirshaid's thesis is publicly available and describes in detail the extent of his contact with Hamas leaders for the purpose of this academic research. No court, in either the U.S. or the U.K. where he completed his Ph.D., ever found him criminally or civilly liable – or even charged him – for any actions taken in his scholarly pursuit.

13

[Dr.] Abuirshaid, and [Dr.] Bazian have been providing substantial assistance to Hamas for decades." JA055, JA102.

Without making clear how any of the allegations against Dr. Abuirshaid could support their claim for harm resulting from Hamas' October 7, 2023 terrorist attacks, Plaintiffs refer to a May 29, 2024 letter from the House Committee on Oversight and Accountability Chairman James Comer to Dr. Abuirshaid that erroneously requested information from AMP about Defendant NSJP's activities. JA096-098. Plaintiffs extract quotes from that letter reflecting the Chairman's requests and unproven assertions, though none support Plaintiffs' claims in this lawsuit. *Id.*

Dr. Hatem Bazian

Dr. Hatem Bazian, a respected academic living and working in the United States, works as a professor at the University of California at Berkeley. JA047. He co-founded and currently serves as the chairman of the Board of Directors for American Muslims for Palestine. JA047. Plaintiffs never allege that Dr. Bazian knew of Hamas' October 7 attacks in advance, or that he participated in or planned them. Instead, they simply make the unsupported the conclusory assertion that "[Dr.] Bazian is responsible, in whole or in part, for directing AMP's ideological efforts for the benefit of Hamas and its allies." JA035. Plaintiffs allege that, "[a]s an undergraduate, [Dr.] Bazian was a member of two Muslim-Brotherhood affiliated organizations, the General Union of Palestine Studies ("GUPS") and the Muslim

14

Students Association ("MSA")." JA047. They further conclude, without alleging supporting facts, that "[t]here is no indication that AMP, NSJP, or the individuals affiliated with them (including Bazian and Abuirshaid) ever ceased providing material support to Hamas," and "AMP, NSJP, [Dr.] Abuirshaid, and [Dr.] Bazian have been providing substantial assistance to Hamas for decades." JA055, JA102.

Taher Herzallah

Herzallah is the Associate Director of Outreach and Grassroots Organizing at AMP, a 501(c)(3) non-profit organization. JA035, JA102. Plaintiffs make only two specific allegations—quoted below—to support their claims against Herzallah:

(1) "Defendant Herzallah, as the liaison between AMP and NSJP, ensures that the propaganda is properly utilized by the various SJP chapters." JA049.

(2) "Mr. Herzallah has worked for AMP since 2010 and has been its Director of Outreach and Grassroots Organizing specifically since 2021." JA102.

That is it. Plaintiffs fail to even include Herzallah in the "Defendants" section of the Amended Complaint. *See* JA035-036.

Zarefah Baroud

Ms. Baroud is a Digital Media Associate at AMP. JA036, JA102. Plaintiffs only state the following allegations against Ms. Baroud, quoted in their entirety below:

(1) "Individual Defendant Zarefah Baroud serves as the Digital Media Associate of AMP, producing propaganda for later dissemination

15

among SJP chapters. Ms. Baroud's father is Ramzy Baroud, a scholar at the Center for Islamic and Global Affairs ("CIGA"), a Turkish "think tank" that hosts conferences attended by Hamas and Muslim Brotherhood leadership. Mr. [Ramzy] Baroud is also the Editor-in-Chief of *The Palestine Chronicle*, a newspaper controlled by a U.S.-based nonprofit that employed a Hamas operative caught holding three Israeli hostages. Defendant resides with her father in Seattle." JA036.

(2) "Ms. Baroud, under the leadership of Abuirshaid and Bazian, oversees AMP's copious social media activity and assists NSJP in the same." JA049.

(3) "Ms. Baroud currently provides and has been providing media services to AMP since at least 2019." JA102.

Plaintiffs do not allege that any Defendants participated in or had any advance knowledge of the October 7 attacks. The Amended Complaint contains no allegations regarding any specific actions by the individual Defendants concerning the production or dissemination of any specific material that could be considered "propaganda." There are no allegations whatsoever regarding any specific social media posts, articles, or other materials that were written, produced or disseminated by the individual Defendants, much less any allegations linking any such unmentioned materials to Hamas, much less any allegations linking such unmentioned materials to the October 7 attacks. The only reasonable conclusion that can be drawn is that whatever actions the individual defendants are being sued for are protected by the First Amendment.

16

**Procedural History**

Plaintiffs filed suit against Defendants in the United States District Court for the Eastern District of Virginia on May 1, 2024.  JA014.  Defendants filed Motions to Dismiss under Rules 12(b)(1), (2), and (6).  JA017, JA020-021, JA023-024. On August 15, 2025, the district court granted all Defendants' motions to dismiss without prejudice under Rules 12(b)(1) and 12(b)(6). JA144-191. In that dismissal order, the district court afforded Plaintiffs leave to amend their complaint, with a second amended complaint to be filed no later than September 14, 2025. JA028, JA191-192. The amendment deadline passed, and Plaintiffs did not file a second amended complaint, which effectuated their dismissal and constituted a waiver of the right to any future leave to amend to cure any factual deficiencies as a basis for remand. JA028, JA192. The district court then issued a final order closing the case on October 15, 2025. JA028, JA192. Plaintiffs filed a notice of appeal on November 7, 2025.  JA193.

**SUMMARY OF ARGUMENT**

First, the district court correctly dismissed the U.S. Plaintiffs' ATA claims for failure to state a claim under Rule 12(b)(6). The district court accurately stated and properly applied the rules and principles from the operative ATA aiding-and-abetting case: *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). The U.S. Plaintiffs' allegations fail to plausibly demonstrate a causal nexus between the torts that

17

allegedly injured them—Hamas's terrorist attacks in Israel on October 7, 2023—and Defendants' alleged conduct. They also fail to allege facts that, taken as true, show prior knowledge of the attack or even that the attack was a foreseeable risk of Defendants' pre-October 7 alleged conduct. Taking all non-conclusory factual allegations as true, it cannot be said from the facts alleged that Defendants each consciously and culpably participated in the October 7 attacks through knowing and substantial assistance to Hamas so as to help make the attacks succeed. Contrary to Plaintiffs' arguments, the novel "enterprise theory" standard from *Taamneh*, which was correctly analyzed by the district court, has not been plausibly met in this case.

Second, the district court correctly dismissed the Israeli Plaintiffs' ATS claims for lack of subject matter jurisdiction as they did not overcome the presumption of extraterritoriality. While the district court did not delve any further into the ATS claims, because it did not need to, the district court could have also dismissed the ATS claims on additional jurisdictional grounds because Plaintiffs failed to assert universal and recognized international law norm violations by each Defendant, and failed to sufficiently demonstrate that the exercise of judicial discretion is appropriate here to create a cause of action, rather than deferring to Congress.

Finally, Plaintiffs failed to state a plausible international aiding-and-abetting claim for relief against each Defendant under Rule 12(b)(6) and Fourth Circuit precedent—another appropriate ground available to the district court for dismissal.

This Court may affirm the dismissal on any of these dispositive bases.

18

**STANDARD OF REVIEW**

This Court reviews *de novo* a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015), and for failure to state a claim under Rule 12(b)(6). *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019). A district court must dismiss an action or claim over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres*, 776 F.3d at 272.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts that, when taken as true, are sufficient to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plausible claim requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is because "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). This Court accepts a plaintiff's well-pleaded allegations as true

19

and views the complaint in the light most favorable to the plaintiff. *Id.* But legal conclusions enjoy no such deference, *Iqbal*, 556 U.S. at 678, nor do "unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quotation omitted).

## ARGUMENT

**I.     THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE U.S. PLAINTIFFS DID NOT STATE PLAUSIBLE ATA CLAIMS AGAINST DEFENDANTS.**

Under the ATA, 18 U.S.C. § 2333, those injured by an act of international terrorism can sue the relevant terrorists directly under §2333(a)—or they can sue anyone "who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism" under §2333(d)(2). *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483 (2023). The U.S. Plaintiffs bring their ATA claims against Defendants pursuant to §2333(d)(2), relying exclusively on the aiding-and-abetting provision.[7]

To state a claim for aiding-and-abetting liability under Section 2333(d)(2), a plaintiff must plausibly allege that each defendant knowingly provided substantial assistance to a foreign terrorist organization's act of international terrorism that injured the plaintiffs in their person, property, or business. 18 U.S.C. § 2333(d)(2).

---

[7] Plaintiffs neither allege conspiracy in the Complaint nor otherwise invoke the conspiracy provision in § 2333(d)(2). *See* JA100-103 (only referencing "aiding and abetting").

Plaintiffs allege that Hamas is a foreign terrorist organization that "committed, planned, or authorized various acts of international terrorism including its (a) terrorist attack on October 7th; (b) ongoing rocket attacks against non-military, civilian targets; and (c) holding innocent civilians hostage." JA101. As a threshold matter, however, the only alleged act of international terrorism this Court can properly consider for purposes of Plaintiffs' ATA claims is the "terrorist attack on October 7" because it is the only tortious act upon which Plaintiffs alleged injuries arose. *Accord* JA032-034. *See also Taamneh*, 598 U.S. at 497 ("the text [of the ATA] requires that defendants have aided and abetted the [specific] act of international terrorism that injured the plaintiffs"). Plaintiffs argue that the district court erred in limiting its analysis largely to October 7 because they claim that they have pleaded ongoing harm after the October 7, 2023 attack. Yet, Plaintiffs fail to offer any specifics in the Amended Complaint (or their brief) that connect any post October 7 Hamas attack to any specific injuries suffered by Plaintiffs. Instead, Plaintiffs only make random and vague allegations regarding "ongoing" rocket attacks, and again fail to connect any of these "ongoing rocket attacks" to their injuries such that this Court could conclude that Plaintiffs have plausibly alleged that these Defendants can be held liable for their injuries under the ATA.

Thus, the primary question, as noted by the district court, is whether Defendants' conduct constitutes "aid[ing] and abet[ing], by knowingly providing

21

substantial assistance" to Hamas in its commission of the October 7 attacks that allegedly injured the U.S. Plaintiffs. The district court thoroughly discussed the applicable standard as set forth in *Taamneh* and properly applied those rules to the alleged facts of this case. *See* JA186-190.

### A. The *Taamneh* ATA Aiding-and-Abetting Standard

Aiding-and-abetting liability under the ATA is limited to only "conscious, voluntary, and culpable participation in another's wrongdoing," meaning that "the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" *Taamneh,* 598 U.S. at 493, 497. Importantly, "the text requires that defendants have aided and abetted the [specific] act of international terrorism that injured the plaintiffs." *Id.* at 497. While the Supreme Court pointed to the aiding-and-abetting factors from *Halberstam* v. *Welch*, 705 F.2d 472 (D.C. Cir. 1983) as a useful tool, it emphasized that "[t]he point of those factors is to help courts capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor." *Taamneh*, 598 U.S. at 504.

A "close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, but even more remote support can still constitute aiding and abetting in the right case." *Id.* at 496. Liability requires a connection between the alleged assistance and the specific act of international

22

terrorism that injured plaintiffs; a failure to allege any "definable nexus" between the assistance provided and the wrongful act—"at minimum—drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack." *Id.* at 503. "[L]ess substantial assistance require[s] more scienter before a court could infer conscious and culpable assistance," and, "vice versa, if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort." *Id.* at 492. The Supreme Court then reiterated the same test later in the opinion, explaining that "[w]hen there is a direct nexus between the defendant's acts and the tort, courts may more easily infer such culpable assistance." *Id*. at 506. "[T]he more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id*. "And, if a plaintiff's theory would hold a defendant liable for all the torts of an enterprise, then a showing of pervasive and systemic aid is required to ensure that defendants actually aided and abetted each tort of that enterprise." *Id*.

"The rule imposes liability for a wrong on those who 'hel[p] another to complete its commission." *Id*. at 494 (quoting *Rosemond v. United States*, 572 U.S. 65, 70 (2014)) (emphasis original). "The focus must remain on assistance to the tort for which plaintiffs seek to impose liability." *Id*. at 506.

23

**B.      Plaintiffs' Allegations Do Not Satisfy the *Taamneh* Standard.**

As pled in the Amended Complaint, Plaintiffs are trying to hold Defendants liable for their injuries stemming from the October 7, 2023 attack. Plaintiffs allegations, however, do not plausibly allege that Defendants aided and abetted Hamas in carrying out that attack. As Defendants did not knowingly and substantially assist the act of terror that injured Plaintiffs, the dismissal of the U.S. Plaintiffs' ATA claims was warranted.

1.      Plaintiffs fail to factually plead the requisite knowledge.

First, Defendants did not knowingly assist Hamas in the October 7 attacks that allegedly injured Plaintiffs. "The knowing part of [the] inquiry is … designed to capture the defendants' state of mind with respect to their actions and the tortious conduct." *Taamneh*, 598 U.S. at 504. Plaintiffs' failure in this case to allege any "definable nexus" between the assistance provided and the wrongful act (discussed *infra*)—"at minimum—drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack." *Id*. at 503. In the backdrop of this "drastically" increased scienter burden, Plaintiffs allegations do not even plausibly allege that the Defendants had prior knowledge of the October 7, 2023 attack, much less that they provided "intentional aid that substantially furthered the tort."

24

The very few allegations regarding Defendants' conduct in relation to alleged support of Hamas prior to the October 7, 2023 attack are vague, conclusory, and do not specifically relate to the U.S. Plaintiffs' injuries. Plaintiffs brief only focuses on "Defendants' post-October 7 acts, combined with" an attenuated, speculative, and undefined "pre-October 7 relationship with Hamas." Pls.' Br. at 14. As noted by the district court, "it is clear from even a cursory review of the Amended Complaint that Plaintiffs focus their allegations not on what Defendants did in relation to the October 7, 2023 attack, but what came afterward." JA060-099 (factual allegations regarding Defendants' conduct after the October 7 attack). Plaintiffs' opening brief attempts to circumvent this inherent pleading deficiency by arguing that while "post-crime acts might not always establish aiding and abetting on their own," they can provide relevant circumstantial evidence of aiding-and-abetting if it can show prior knowledge of or participation in the crime. Pls.' Br. at 14, 35.[8] The issue is that the

---

[8] In support of this proposition, Plaintiffs cite a string of exclusively criminal cases—rather than civil tort cases—discussing criminal evidence rules and burdens. Even then, those cases make clear that any post-crime actions by a defendant are only relevant to the extent they tend to show the defendant's earlier pre-crime actions constitute aiding-and-abetting. *See State v. Holcomb*, 268 P.3d 684, 687 (Or. Ct. App. 2011). Plaintiffs allege no pre-crime aiding-and-abetting actions of these Defendants with any specificity. The post-Hamas attack "public relations" allegations are therefore irrelevant. Plaintiffs also cite *Davis v. Lafler* in support but that criminal case does not help them as it states: "But mere presence, or even knowledge, that a crime is about to be committed is insufficient to prove guilt under an aiding-and-abetting theory." *Davis v. Lafler*, 658 F.3d 525, 532 (6th Cir. 2011). Plaintiffs here cannot even plausibly establish Defendants presence at or prior knowledge of Hamas's October 7 attacks under their facts.

alleged post-October 7 conduct of Defendants does **not** plausibly show prior knowledge or any participation in Hamas's October 7 attack. The Amended Complaint alleges that on October 8, the day after Hamas's attack, AMP and NSJP disseminated the "Toolkit" across more than 300 American college campuses and on the internet in an effort to organize protests. JA031, JA060. Plaintiffs ask this Court, just as they asked the district court, to draw the unsupported and unreasonable inference that all Defendants knew about the attack because, the **following day** on October 8, 2023, the Toolkit included a clip-art style graphic of a paraglider. The district court declined to draw such an unreasonable inference, JA183, and this Court should do the same.[9]

Moreover, Plaintiffs contend that the April 15, 2024 economic "Strike4Gaza," six months after the October 7 attacks, supposedly infers "coordination" between Iran and local AMP and NSJP university chapters, and which then supports the inference that those two Defendants received advanced warning from Iran before the October 7, 2023 attack.[10] In other words, Plaintiffs ask the Court here to draw a chain of attenuated inferences to establish knowledge, which is unreasonable. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting standing theory that rested

---

[9] Plaintiffs do not allege that any of the individual Defendants or WESPAC, NSJP's alleged fiscal sponsor, had any knowledge of the Toolkit and its contents either before the October 7 attack or afterwards.

[10] Not even conclusory coordination with Iran is alleged as it relates to WESPAC and the individual Defendants.

on a "highly attenuated chain of possibilities"). As this is a case of "less substantial assistance" (if any at all), it "require[s] more scienter before a court could infer conscious and culpable assistance" under the ATA. *Taamneh*, 598 U.S. at 492. Plaintiffs' allegations of Defendants' pre-and-post-tortious act conduct do not meet this heightened knowledge pleading requirement.

Contrary to Plaintiffs' clear error contention, the district court had to demand a strict nexus between the Defendants' alleged conduct and the tort committed by Hamas under these facts because Plaintiffs did not plead sufficient facts to come close to plausibly meeting the "knowingly" requirement as the *Taamneh* standard mandates. Indeed, Plaintiffs acknowledge in their brief that Section 2333(d)(2)'s "twin requirements"—knowing and substantial assistance—"work in tandem, with a lesser showing of one demanding a greater showing of the other." Pls.' Br. at 18 (citing *id*. at 491-92).

In a similar vein, Plaintiffs (Br. at 20) latch onto this quote from *Taamneh*: "a close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, but even more remote support can still constitute aiding and abetting in the right case." *Id*. at 496. Plaintiffs then forget to apply it to all the text that surrounds it. Where there is remote support (*i.e.* less substantial assistance), greater scienter is required, which Plaintiffs cannot establish. As the district court properly found that Defendants had no prior knowledge of the

27

attack that injured Plaintiffs (or any other attack), remote support will not suffice. Plaintiffs own allegations are what demand a close nexus to overcome the initial pleading threshold.

2.    Plaintiffs cannot plausibly establish "substantial" assistance.

Second, Defendants did not assist Hamas at all in the October 7, 2023 attack and any purported assistance certainly was not "substantial." Plaintiffs do not allege that any Defendants assisted in the planning, preparation, funding, or execution of the October 7, 2023 attack. Plaintiffs have not alleged that any of the Defendants directly financed Hamas, nor that any funds WESPAC provided to NSJP for peaceful protests were then provided to Hamas. Plaintiffs could not, and did not, allege that the attack was dependent on any of the Defendants because there is no causal nexus between Defendants' alleged conduct and the October 7, 2023 attack.

On the spectrum of culpable conduct contemplated under *Taamneh*, the nexus between Defendants' alleged acts and the tort (the October 7 attack) is the most attenuated it possibly could be. The greater the attenuation, the more this Court must "demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id*. at 506. The crux of the Amended Complaint is that Plaintiffs allege some Defendants allegedly published and/or distributed a "Toolkit" and organized protests in the U.S. after the October 7 attack, and that WESPAC partially funded the protests (legal First Amendment activity). This does

28

not plausibly demonstrate intentional aid to Hamas that substantially furthered the terrorist attack on October 7.

Defendants' purported assistance to Hamas, as alleged, is not "direct and extraordinary." Rather, the string of speculative inferences Plaintiffs ask this Court to make in order to support a threshold finding of knowledge and/or participation must be rejected because *Taamneh* mandates this Court **cannot** "more readily infer conscious participation in the underlying tort" where the Defendants alleged assistance is **not** "direct and extraordinary." *Id*. at 492. Plaintiffs' generic allegations that Defendants somehow provided general assistance to Hamas through pro-Palestine public relations efforts do not suffice; they must instead connect Defendants' aiding-and-abetting conduct to the specific act of terrorism giving rise to their injuries. *Taamneh*, 598 U.S. at 497, 503. Plaintiffs' Amended Complaint fails to do so.

Knowing this factual gap exists, Plaintiffs attempt to paper over it by alleging that, on October 29, 2023, "Hamas applauded and celebrated 'the masses' who demonstrated in American cities and Western capitals in solidarity with Gaza," JA092, and that, on March 24, 2024 (after the attack), a speaker at Columbia University "told the group that when he speaks with his 'friends and brothers in Hamas, the PIJ, the PFLP' and other terrorist organizations operating in Gaza, he learns that the terrorists care more about the support they receive from American

29

students protesting on their behalf than they do about what the President or Vice President of the United States says or does." JA093. As the district court found, those alleged facts, taken as true, do not support an inference that Defendants' actions specifically assisted with Hamas's October 7, 2023 attack (or any subsequent torts committed by Hamas). Contrary to Plaintiffs' argument, under the motion to dismiss standard, they are only entitled to inferences that can be derived from the facts alleged. *See Xia v. Tillerson*, 865 F. 3d 643, 649 (D.C. Cir. 2017). The non-conclusory factual allegations available do not permit this Court to infer substantial assistance.

This case is similar to other cases which have sought to hold some of the Defendants liable for the October 7, 2023 attack, in that it fails to connect the actions of these Defendants to the attack itself. For example, in *Gerwaski*, the plaintiff sued AMP and the UNLV chapter of Students for Justice in Palestine (SJP-UNLV) for aiding-and-abetting terrorism under the ATA. *Gerwaski*, 2025 U.S. Dist. LEXIS 84645, at *1-2. The complaint alleged that AMP and SJPUNLV repeat Hamas's rhetoric in the U.S. and justify its actions. *Id*., at *15. It also alleged that Hamas welcomed this support, and its goals are renewed and reinvigorated by this support. *Id*. The court found that the plaintiff did **not** plausibly allege that AMP and SJP-UNLV provided substantial assistance to Hamas for its act of international terrorism. *Id*. It reasoned that "even if vocal support from across the world could be substantial

30

assistance for future acts of terrorism, Gerwaski does not allege any actions by the defendants that substantially assisted the October 7, 2023 act of international terrorism." *Id*. In short, the court found it dispositive that "all of the defendants' conduct alleged in the FAC took place after this event." *Id*.

Also analogous to the allegations asserted against these Defendants, the case of *Kayemeth I and Kayemeth Leisrael-Jewish National Fund v. Education for a Just Peace*, 66 F.4th 1007 (D.C. Cir. 2023) proves instructive. In *Kayemeth*, the plaintiffs asserted ATA liability for a fiscal sponsor that did not provide funds to an entity designated as an FTO, but rather provided funds to a U.S. group alleged to be affiliated with an FTO. 66 F.4th at 1011-13. Specifically, the plaintiffs alleged the defendant, U.S. Campaign for Palestinian Rights ("USCPR"), was a fiscal sponsor of the Boycott National Committee, a Palestinian activist group allegedly tied to Hamas, and acted as a "coordinating framework" to assist Hamas's activities. *Id*. The D.C. Circuit dismissed the ATA claim pursuant to Rule 12(b)(6) because, broadly speaking, the Complaint lacked concrete, factual allegations to show a sufficient connection between USCPR and Hamas capable of holding USCPR liable. *Id*. at 1011, 1016-18. While the plaintiff claimed that Boycott National Committee's efforts to "economically, academically, and diplomatically" boycott Israel constituted terrorism, the D.C. Circuit determined that those actions were legal, and

31

there were no other facts alleged to suggest USCPR was taking a role in acts of terrorism. *Id*. at 1017.

Just like the plaintiffs in *Kayemeth* called an organized, legal economic boycott against Israel "terrorism," Plaintiffs here call NSJP's organized protests against Israel's military action "terrorism." The D.C. Circuit ignored the plaintiffs' conclusory labels and identified the boycott for what it is: legal First Amendment activity.

Moreover, in cases of alleged financial assistance, an indicator of whether aid was substantial is if the defendant's money ever reached the terrorist organization. The D.C. Circuit in *Kayemeth* found the plaintiffs' allegations conclusory and insufficient because they did not suggest funds provided by defendant USCPR were used to "finance any terrorist attacks much less that [USCPR] was aware that it was happening." 66 F.4th at 1017. As the D.C. Circuit observed, there were no allegations that its fiscal sponsor, Boycott National Committee, ever provided funds to Hamas. *Id.* at 1017; *see also Bernhart v. Islamic Republic of Iran*, 47 F.4th 856, 871 (D.C. Cir. 2022) (noting the Complaint "fails to allege how much (if any) of that money indirectly flowed to al-Qaeda"); *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (although plaintiffs alleged the provision of "hundreds of millions of dollars" to an intermediary, "they did not advance any non-conclusory allegation that [al-Qaeda] received any of those funds").

32

Plaintiffs rely on *Halberstam v. Welch* to support their substantial assistance argument to no avail. *Halberstam* involved a serial burglar who had killed the decedent during a break-in and his aiding-and-abetting partner-in-crime who lived with him and would sell and launder the stolen goods for years. 705 F.2d at 474-76. She had knowledge that she was assisting in some sort of illegal scheme involving stolen goods but never joined him on any of the robberies. *Id*. at 486-87. She was held responsible for aiding-and-abetting a murder because of her prior conduct within the illegal robbery scheme, not for what she did after the murder. *Id*. The six *Halberstam* factors which help determine "substantial" acts are:

> (1) the nature of the act encouraged;
> (2) the amount of assistance given;
> (3) defendant's presence or absence at the location and time of the attack;
> (4) defendant's relation to the principal;
> (5) defendant's state of mind; and
> (6) the period of assistance.

*Id.* at 483-84. In assessing the nature and amount of alleged assistance, the question is whether the wrongful act was "heavily dependent" on the assistance provided, or whether the assistance was "indisputably important to," or an "essential part of" the act. *Id.* at 488. Here, Plaintiffs cannot reasonably argue, let alone plausibly plead, that the October 7 attack was dependent on Defendants' actions. The nature of the assistance is post-October 7 free speech activity regarding Israel's conduct in Gaza and WESPAC's donations in support of the same (the Complaint does not specify how much money WESPAC provided NSJP or what the funds were used for). *See*

33

*also Taamneh*, 598 U.S. at 505-06 (finding plaintiffs did not plausibly allege that Google knowingly provided substantial assistance to the Reina terrorist attack—let alone every single terrorist act committed by ISIS—in part because the complaint failed to allege "the amount of money that Google supposedly shared with ISIS"). The third factor is strongly in favor of Defendants, who are not alleged to have been present in Israel (or Palestine) during the October 7 attack. The fourth factor likewise favors Defendants because Plaintiffs' speculative and conclusory allegations of some Defendants' ties to Hamas need not be accepted as true.[11] The fifth factor (state of mind) has already been discussed *supra* and weighs in Defendants favor. The final factor (the period of alleged assistance) is unavailing because Plaintiffs did not allege any specific non-conclusory conduct by the Defendants in the period prior to the October 7, 2023 attack that allegedly injured them. Instead, Plaintiffs focus on Defendants' activity in 2023 *after* the October 7 attack. The application of these factors thus does not support a plausible finding of substantial assistance.

---

[11] Plaintiffs' argument that AMP is the "reincarnation" of prior material support enterprises, based primarily on allegations of shared board members, JA041-050, does not suffice. As for NSJP, the Toolkit states that Palestinian students in exile are part of a "moment of mobilization for all Palestinians." It is not a reasonable inference that this statement, coupled with the observation that "[a]ll Palestinian factions in Gaza appear to be participating under unified command," to be an admission by NSJP that it is "part of Hamas and works to further its evil ends." JA185. This statement from after the October 7, 2023 attack also does not make up for the lack of facts plausibly showing that Defendants' conduct aided and abetted the attack.

34

3.    Plaintiffs' "Near-Common Enterprise" Theory argument fails.

Plaintiffs ask this Court to interpret the scope of the enterprise theory in a vacuum, hoping the Court will overlook all the ATA requirements and principles that preceded its mention in *Taamneh*. The district court considered and addressed the enterprise theory rules from *Taamneh*, JA186-190, finding Plaintiffs' alleged facts insufficient. Plaintiffs' broad conclusory assertion that "Defendants' support has been so systematic that Defendants aid and abet every wrongful act committed by Hamas and its affiliates" does not overcome their factual deficiencies.

As explained in *Taamneh*, if Plaintiffs wish to pursue a theory of liability against Defendants "for all the torts of an enterprise," then "**a showing of pervasive and systemic aid is required** to ensure that [Defendants] actually aided and abetted **each** tort of that enterprise." *Taamneh,* 598 U.S. at 506 (emphasis supplied). In "appropriate circumstances," where a defendant's role in an illicit enterprise is "so systemic," it may support aiding-and-abetting liability for "every wrongful act committed by that enterprise." *Id*. at 496. In that case, a court must determine "whether a defendant has so consciously 'participate[d] in' a series of tortious acts in order to 'make [each one] succeed.'" *Id*. (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949))."It is not enough . . . that a defendant ha[s] given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Id*. at 495.

As noted by the Supreme Court, the Ninth Circuit incorrectly framed the issue of substantial assistance as turning on defendants' assistance to ISIS activities in general. *Taamneh*, 598 U.S. at 503. Plaintiffs' brief sets the same trap by arguing Defendants' assistance to Hamas in general is substantial by (in their words) serving as its "propaganda arm" in the United States without actually tying the alleged assistance to the harms suffered by Plaintiffs. The question before the Supreme Court was "whether defendants gave substantial assistance to ISIS with respect to the Reina attack" and in this case, whether Defendants gave substantial assistance to Hamas with respect to the October 7 attack. *Id*. at 503. Just as in *Taamneh*, the question must be answered in the negative.

Furthermore, the allegations against Defendants are nowhere near the "pervasive and systemic aid required" to ensure that all Defendants "actually aided and abetted each tort of that enterprise." *Id*. at 506.[12] Plaintiffs claim that WESPAC has been a fiscal sponsor to NSJP since 2016, but the Amended Complaint does not allege the amount of money allocated to NSJP over that time period, when it was transferred, what it was used for, or any facts that show NSJP or AMP gave

---

[12] Indeed, liability for all the torts of an enterprise is impossible for a secondary defendant like WESPAC where the alleged intermediary's aid, not the financing defendants, is the asserted pervasive and systemic aid to a terrorist enterprise. Either way, because the defendant "intermediaries" in this case have not plausibly provided pervasive and systemic aid to Hamas themselves, no liability can attach to WESPAC for its alleged financial support.

36

assistance to Hamas over that time frame. Instead, the Complaint focuses on Defendants' legal First Amendment activity in 2023 *after* the October 7 attack.

Exploring the uncharted parameters of the novel "enterprise theory" relied on by Plaintiffs, in order to remain consistent with the text of the ATA and the foundational principles of tort liability, a secondary "aiding-and-abetting" defendant would only be liable (in the "appropriate circumstances") for all or "some definable subset of" tortious acts of the FTO that occur after (or during) the defendant's "pervasive and systemic" aiding-and-abetting conduct "to ensure that defendants actually aided and abetted *each* tort of that enterprise." *Taamneh*, 598 U.S. at 502, 506. A victim who is injured by an FTO's tortious act before a secondary defendant's alleged aiding-and-abetting involvement in that enterprise cannot recover damages from that secondary defendant because that injury was not a foreseeable risk to them. "People who aid and abet [one] tort can be held liable for other torts that were 'a foreseeable risk' of the intended tort." *Id*. at 496 (quoting *Halberstam*, 705 F.2d at 488).[13] Put differently, the ATA does not confer civil liability upon aiding-and-abetting defendants for injuries sustained by an FTO's terrorist attacks that occurred

---

[13] For example, "a defendant might be held liable for aiding-and-abetting the burning of a building if he intentionally helped others break into the building at night and then, unknown to him, the others lit torches to guide them through the dark and accidentally started a fire." *Id*. at 495-96. In this example by the Supreme Court, the aiding-and-abetting conduct took place prior to the resulting damages suffered by any claimants—the only way such damages could be foreseeable to the aider and abettor.

37

before the subject defendants were allegedly providing the pervasive and systemic aid to the FTO. If it did, said defendants could not be found to have "actually aided and abetted each tort" of the FTO. Here, Plaintiffs allege they were injured in the October 7, 2023 Hamas attacks in Israel and the specific alleged "aiding and abetting conduct" of Defendants in the Amended Complaint all occurred after October 7, 2023, thus precluding liability under the ATA. Plaintiffs' general and conclusory allegations of "systemic" support do not allow them to circumvent the necessity to sufficiently allege "defendants actually aided and abetted each tort of that enterprise." *Id*. at 506.

In sum, none of Plaintiffs' allegations against Defendants suggest that it culpably "associated [themselves] with" the October 7 attack, "participate[d] in it as something that [they] wishe[d] to bring about," or sought "by [their] action to make it succeed." *Taamneh,* 598 U.S. at 498. There is even less support that Defendants so pervasively and systemically assisted Hamas as to render it liable for every Hamas attack, an incredibly high bar. Taking the facts as alleged, the nexus between Defendants and the October 7 Hamas attack is so attenuated and vague as to be nonexistent. Plaintiffs have failed to state a claim for relief under § 2333(d)(2).

38

**II.**   **THE DISTRICT COURT CORRECTLY DISMISSED THE ISRAELI PLAINTIFFS' ATS CLAIMS ON JURISDICTIONAL GROUNDS, AND AFFIRMANCE WOULD LIKEWISE BE APPROPRIATE ALTERNATIVELY UNDER RULE 12(b)(6) AS PLAINTIFFS DID NOT STATE A PLAUSIBLE INTERNATIONAL LAW AIDING-AND-ABETTING CLAIM.**

### A.   The District Court Properly Held That It Lacks Subject-Matter Jurisdiction Over the Israeli Plaintiffs' Claims Under the ATS.

The dismissal of Israeli Plaintiffs' claims under the ATS, 28 U.S.C. § 1350, should be affirmed because the Amended Complaint fails to allege facts vesting the district court with subject matter jurisdiction.

The ATS provides a jurisdictional avenue for non-U.S. foreign citizens to bring civil lawsuits in U.S. federal court for a narrow set of international law violations committed by U.S. actors that cause tortious harm. *See* 28 U.S.C. § 1350 ("The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."). The ATS is "strictly jurisdictional and does not by its own terms provide or delineate the definition of a cause of action for violations of international law." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 254, 256 (2018) (finding that "ATS claims must be subject to vigilant doorkeeping" by the courts). Every ATS case to date that has come before the Supreme Court has been dismissed on jurisdictional grounds. This matter is no exception.

39

First, the Israeli Plaintiffs fail to plead facts to overcome the presumption against extraterritorial application.[14] Second, Plaintiffs fail to establish Defendants' conduct constituted a violation of a universal and recognized international law norm contemplated by the ATS. Third, Plaintiffs cannot demonstrate why the Court should exercise judicial discretion to create a new cause of action, rather than defer to Congress.

      1.      The allegations in the Amended Complaint fail to displace the presumption against extraterritoriality.

The presumption against extraterritoriality applies to claims under the ATS, and nothing in the statute rebuts the presumption. *Jesner*, 584 U.S. at 256-57. Under the presumption, plaintiffs are barred in most situations from bringing an ATS claim regarding tortious conduct that occurred in the territory of a foreign sovereign, as is the case here. To overcome the presumption against extraterritoriality, "plaintiffs must establish that 'the conduct relevant to the statute's focus occurred in the United States.'" *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 633 (2021) (quoting *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016)); *see also Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 528 (4th Cir. 2014) ("[T]he presumption against extraterritorial application bars the exercise of subject matter jurisdiction over . . . ATS claims

---

[14] Because the district court found Plaintiffs failed to plead facts overcoming the presumption against extraterritorial application of the ATS, it declined to address the other jurisdiction arguments, which would also be dispositive here.

40

unless the 'relevant conduct' alleged in the claims 'touch[es] and concern[s] the territory of the United States with sufficient force to displace the presumption.'" (*quoting Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124-25 (2013)). The relevant domestic conduct in an ATS aiding-and-abetting case must be "extensive" and "specific." *Jara v. Núñez*, 878 F.3d 1268, 1273 (11th Cir. 2018).

The Israeli Plaintiffs claim members of Hamas injured them in Israel during the October 7 attack. "Even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Jesner*, 584 U.S. at 257. A plaintiff may overcome that presumption only where a defendant's alleged actions in the United States have a sufficient causal connection to the alleged harm. *Nestle*, 593 U.S. at 634. Thus, the Israeli Plaintiffs must overcome the presumption against extraterritorial application of the ATS by alleging domestic conduct sufficiently connected to the actions of the Hamas terrorists that harmed Plaintiffs. *Id*. "Generic allegations" will not suffice to "draw a sufficient connection between the cause of action … and domestic conduct." *Id*.

Here, because Plaintiffs' injuries occurred on October 7, 2023, the district court was correct to examine Plaintiffs' allegations regarding Defendants' conduct in the United States before the October 7, 2023 attack in Israel. While the Israeli Plaintiffs allege domestic conduct—student protests, campus events, and charitable

41

funding of same in the U.S.)—none of the alleged conduct is sufficiently causally connected to the October 7 attack because it all occurred after October 7, 2023. *See* JA060-099. No Defendants are alleged to have committed acts of terrorism in Israel nor does the Amended Complaint plausibly allege Defendants' conduct in the U.S. causally contributed to carrying out the attack. Plaintiffs assert AMP and NSJP aided and abetted Hamas by distributing purported pro-Hamas propaganda and organizing protests in the United States after the attack. WESPAC is alleged to have aided and abetted NSJP by providing NSJP monetary funds in the United States (an even hazier form of hypothetical secondary liability). It is unclear what the alleged aiding-and-abetting conduct is for the individual defendants in the Amended Complaint who are barely referenced. In short, Defendants' alleged domestic conduct is too attenuated from the primary foreign conduct of Hamas to displace the presumption against extraterritorial application.

In *Al Shimari*, relied on by Plaintiffs, the plaintiffs brought claims against a military contractor for aiding-and-abetting and conspiring with military personnel to inflict torture or cruel, inhuman, or degrading treatment on detainees at Abu Ghraib (located in Iraq). *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 485-86 (E.D. Va. 2023). The district court in *Al Shimari* held that extensive and specific domestic conduct with direct connections to the harm alleged is required. *Id*. at 496. *See also id*. at 499 (emphasizing "significant domestic conduct that is directly related

to plaintiffs' claims"). Specifically, the district court found plaintiffs had "produced sufficient evidence showing that [the] civil action involves significant domestic conduct that is directly related to plaintiffs' claims," such as the execution of the contract to provide the interrogation services at issue in the United States, the training of the alleged perpetrators in the United States, the hiring of the alleged perpetrators in the United States, and a reporting structure by the perpetrators to CACI personnel in the United States, which included sending frequent status reports to management in the United States. *Id*. at 499-503. Indeed, the court in *Al Shimari* emphasized a key factual distinction between the conduct alleged there and the facts in *Kiobel*, *Jesner*, and *Nestlé*. In those cases, the alleged torts did not involve U.S. nationals acting under a U.S. government contract in foreign territory controlled by the United States, nor did they include allegations of a post hoc cover-up in the United States. *Id*. at 496. Under those unique facts, the district court reaffirmed that the presumption against extraterritoriality was overcome in that case. *Id*. at 497.

Important for purposes of the instant case, it is not alleged that Defendants committed the tort of international terrorism or that any domestic aiding-and-abetting conduct actually furthered/contributed to the foreign tort committed by foreign terrorists in a foreign territory. Plaintiffs do not allege that any planning, preparation, funding, or execution of the October 7, 2023 attack or any violations of international law by Hamas occurred in the United States. None of the direct

43

attackers are alleged to be citizens of the United States. Plaintiffs' "public relations" allegations concerning Defendants are vague and conclusory and cannot satisfy the jurisdictional burden.

In *Drummond*, the plaintiffs alleged defendants aided and abetted and conspired with a Colombian paramilitary group (a United States-designated terrorist organization) from within the United States, resulting in war crimes and the extrajudicial killing of the plaintiffs' decedents in Colombia. *Doe v. Drummond Co.*, 782 F.3d 576, 579-80 (11th Cir. 2015). The plaintiffs "allege[d] that generally [the defendants] made funding and policy decisions in the United States; but [the plaintiffs] specifically allege[d] that the agreements between [the defendants] and the perpetrators of the killings, the planning and execution of the extrajudicial killings and war crimes, the collaboration by [the defendants'] employees with the [paramilitary group], and the actual funding of the [paramilitary group] all took place in Colombia." *Id.* at 598. Accordingly, the Eleventh Circuit held that the presumption against extraterritoriality was not overcome. *Id.* at 598-601.

In *Adhikari*, the families of employees who were kidnapped and murdered by an Iraqi insurgent group on their way to work, as well as one employee who was not captured, sued the corporation and its subcontractor, alleging that they engaged in human trafficking by "willfully and purposefully form[ing] an enterprise with the goal of procuring cheap labor and increasing profits." *Adhikari v. Kellogg Brown &*

44

*Root, Inc.*, 845 F.3d 184, 190 (5th Cir. 2017). With respect to the presumption against extraterritoriality, the plaintiffs alleged that the subcontractor "transferred payments to [the corporation] from the United States, using New York Banks." *Id*. at 198. However, the plaintiffs "failed to connect the alleged international law violations to these payments or demonstrate how such payments—by themselves—demonstrate that [the subcontractor's] U.S.-based employees actually engaged in trafficking the Deceased or forcing [the surviving plaintiff] to work on its base." *Id*. Thus, the Fifth Circuit held that the plaintiffs "failed to show how [the subcontractor's] alleged financial transactions permit a domestic application of the ATS." *Id*.

At bottom, Plaintiffs do not plead specific facts adequate to "draw a sufficient connection between the cause of action [Plaintiffs] seek—aiding and abetting [Hamas's October 7, 2023 attack] overseas—and [Defendants'] domestic conduct." *Nestle*, 593 U.S. at 634. Plaintiffs do not allege sufficient facts allowing a plausible inference that Defendants' "public relations" activities aided and abetted Hamas in carrying out the specific October 7, 2023 attack that caused the Israeli Plaintiffs' injuries (or subsequent or continuing Hamas violations for that matter), and thus do not allege sufficient "relevant" domestic conduct. Although Plaintiffs allege domestic conduct, almost all of their specific allegations relate to conduct that occurred after October 7, 2023. Thus, they fail to show how this domestic conduct

45

is "relevant"—that is, that it assisted Hamas's October 7, 2023 attack or any subsequent violations of international law upon which Plaintiffs could premise their claims here.

Unlike in *Al Shimari*, in which the alleged domestic conduct—including the execution of the contract to provide the specific interrogation services at issue and the training and hiring of the perpetrators—was "directly related to plaintiffs' claims," 684 F. Supp. 3d at 499-503, here the domestic conduct—"public relations" activities broadly—has not been sufficiently connected to (or plausibly shown to itself be) "conduct constituting the alleged violation of the law of nations." *Al Shimari*, 684 F. Supp. 3d at 494. Because Plaintiffs' allegations regarding "public relations" activity fail to be "relevant conduct" in the jurisdictional inquiry, Plaintiffs' allegations that WESPAC funded the same also fail.[15]

Where the domestic conduct is not adequately connected to the international law violation(s), the presumption against extraterritoriality bars jurisdiction. *See Nestle*, 593 U.S. at 634 (holding plaintiffs' allegations failed to "draw a sufficient connection between the cause of action [plaintiffs] seek—aiding and abetting forced labor overseas—and domestic conduct"); *Adhikari*, 845 F.3d at 198 (recognizing lack of jurisdiction because plaintiffs "failed to connect the alleged international law

---

[15] Plaintiffs do not allege that WESPAC ever directly provided any funds to Hamas nor that NSJP ever provided any funds to Hamas.

violations to" payments made using New York Banks); *Jara*, 878 F.3d at 1273 (noting "allegations that an American [corporate] defendant made a funding and policy decision in the U.S. to support a foreign paramilitary group will not outweigh the extraterritorial location of foreign torts"). Here, Plaintiffs have failed to establish such a link.

Because the Israeli Plaintiffs fail to allege facts upon which subject-matter jurisdiction may be based, and that would overcome the presumption against extraterritorial application, this Court lacks jurisdiction over the ATS claims and should affirm the dismissal.

2.    Plaintiffs failed to assert a viable international norm violation.

Another jurisdictional question under the ATS is whether the international norm alleged to have been violated is "specific, universal, and obligatory." *Jesner*, 584 U.S. at 257-58. The cognizable international law norms have been limited by the Supreme Court historically to three torts from the 1700s: violations of safe conduct, infringement of the rights of ambassadors, and piracy. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 723-24 (2004). In *Nestle*, the Court recently reinforced the ATS's narrow scope, recognizing that its "decisions since *Sosa*, as well as congressional activity, compel the conclusion that federal courts should not recognize private rights of action for violations of international law beyond the three historical torts identified in *Sosa*." *Nestle,* 593 U.S. at 637. Given the strict

47

parameters of this test, the Supreme Court has yet to recognize a cause of action under the ATS. *Id*. at 635. The Israeli Plaintiffs ask this Court to do so.

Plaintiffs' Amended Complaint focuses on asserted violations of the International Convention for the Suppression of the Financing of Terrorism (the "ICSFT"). JA103-105. Consistent with its name, the ICSFT concerns the financing of terrorism. ICSFT, art. 2.1, Dec. 9, 1999, 16 U.S. 49, 2178 U.N.T.S. 197 (stating one commits an offense by "directly or indirectly, unlawfully and willfully, provid[ing] or collect[ing] funds with the intention that they should be used or in the knowledge that they are to be used . . . to carry out: (a) An act which constitutes an offence" defined in the "treaties listed in the annex; or (b) Any other act intended to cause death or serious bodily injury to a civilian . . . " (emphasis added)). This alleged conduct does not establish a universal international norm, and corporate liability for such conduct is likewise not a universal international norm[16] or established by a self-

---

[16] A related consideration is whether international law extends liability for a given norm to the defendant being sued, particularly where the defendant is a private actor such as a corporation or individual. *Sosa*, 542 U.S. at 732 n.20. Although the Court in *Jesner* held that foreign corporations are not subject to ATS liability, it did not decide whether ATS claims against domestic corporations are similarly barred. The *Jesner* plurality nonetheless observed a "strong argument" that international law does not impose an obligatory norm of corporate liability. 584 U.S. at 259. That reasoning applies with equal force to domestic corporations, as the Court's discussion of corporate liability under the ICSFT reflected a general absence of such liability. *Id.* at 261–62. Because the ICSFT does not require signatories to impose corporate liability through common-law tort actions for international law violations, *id.* at 262, Plaintiffs cannot rely on the ICSFT to establish a universally recognized international law violation by WESPAC, AMP, or NSJP. *See also Kiobel v. Royal*

executing U.S. treaty. Either way, Plaintiffs have not alleged that any of the Defendants directly financed Hamas, nor that any funds allegedly provided to NSJP by WESPAC were provided with the knowledge or intent that the funds were to be used to carry out the October 7, 2023 attack or any other acts intended to cause death or serious bodily injury to a civilian. Thus, the Court does not have subject matter jurisdiction over the Israeli Plaintiffs' ATS claims.

3.    The Court should defer to Congress rather than exercise judicial discretion to create a cause of action.

If the plaintiff establishes a specific, universal, and obligatory international norm, the plaintiff must then also demonstrate why the court "should exercise 'judicial discretion' to create a cause of action rather than defer to Congress." *Nestle*, 593 U.S. at 636. Additionally, "a court must not create a private right of action if it can identify even one sound reason to think Congress might doubt the efficacy or necessity of the new remedy." *Id*. at 637. While the plaintiffs in *Nestle* suggested on appeal "that a plaintiff is entitled to a judicially created cause of action absent compelling reasons to withhold one[,] … our precedents demand precisely the opposite rule." *Id*. at 636.

---

*Dutch Petroleum Co.*, 621 F.3d 111, 120, 145 (2d Cir. 2010) (dismissing ATS claims against a corporation for lack of subject matter jurisdiction where corporate liability for customary international law violations has not achieved universal acceptance).

49

Outside of the obvious foreign policy implications at play, there are several other "sound reason[s] to think Congress might doubt the efficacy or necessity of the new remedy" suggested by Plaintiffs, although just one is sufficient to warrant dismissal under part two of the *Sosa* test.

First, Congress has already adopted detailed regulatory regimes governing financial support for terrorism, and this Court should not displace them by allowing common-law actions under the ATS. To that end, the ATA, "part of a comprehensive statutory and regulatory regime that prohibits terrorism and terrorism financing," reflects the careful deliberation of the political branches on when, and how, financial organizations should be held liable for financing terrorism. *Jesner,* 584 U.S. at 268. Its existence "suggests that there should be no common-law action under the ATS" for foreign citizens alleging harm caused by the financing of terrorism because "foreign plaintiffs could bypass Congress' express limitations on liability under the [ATA] simply by bringing an ATS lawsuit." *Id.* at 267-68. As such, it would be inappropriate for this Court to displace the ATA by holding Defendants subject to common-law liability under the ATS. *Id.* at 268.

Second, the Court in *Jesner* held that the requisite "caution" in recognizing new causes of action under the ATS "extends" to whether courts should "impose[] liability upon artificial entities like corporations." 584 U.S. at 264 ("[w]hether corporate defendants should be subject to suit [is] 'a question for Congress.'").

50

The third and fourth reasons to defer to Congress are that it has acted before to create a cause of action under the ATS, yet declined to create a cause of action for the relief sought by Plaintiffs here and declined to extend liability to corporations. "Even in areas less fraught with foreign-policy consequences, the Court looks to analogous statutes for guidance on the appropriate boundaries of judge-made causes of action." *Jesner,* 584 U.S. at 265. Here, the analogous statute is the Torture Victim Protection Act (TVPA), which is "the only cause of action under the ATS created by Congress rather than the courts." *Id.* The TVPA limits liability to "natural persons," and "Congress' decision to exclude liability for corporations in actions brought under the TVPA is all but dispositive." *Id.* at 266. Unlike Plaintiffs' claims stemming from a terrorist attack committed by Hamas, the TVPA only creates a civil remedy for torture victims and the survivors of victims of extrajudicial killing committed by those acting "under actual or apparent authority, or color of law, of any foreign nation." 28 U.S.C. § 1350 (note).

Fifth, given *Jesner's* rejection of foreign corporate ATS liability, a contrary rule for U.S. corporate liability discriminates against U.S. corporations. When Congress enacted the ATS, it surely did not intend to treat U.S. businesses worse than foreign businesses engaged in the same conduct.

The Court need only accept one of the several reasons above why it should not create a private right of action and instead defer to Congress.

### B.    Plaintiffs Did Not State A Plausible International Law Aiding-and-Abetting Claim Via the ATS.

If this Court determines it possesses subject matter jurisdiction over the ATS claims, the ATS claims still warrant dismissal under Rule 12(b)(6). The district court did not need to reach this issue, but the pleading requirements for an ATS aiding-and-abetting claim are that the defendant "(1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime" or alleged violation of an international norm. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396, 401 (4th Cir. 2011). Advance knowledge of an attack is insufficient; a defendant must provide practical assistance with a substantial effect on the attack for the purpose of facilitating the attack. *Id.* at 401. In *Aziz*, this Court rejected the plaintiffs' ATS claims because they failed to plausibly plead non-conclusory facts that demonstrated that the defendant pharmaceutical company gave chemical supplies to Iraq with the purpose of facilitating genocide. *Id.* at 401-02. This Court recently reaffirmed the *Aziz* holding in *Est. of Alvarez v. Rockefeller Found.*, 96 F.4th 686, 693 (4th Cir. 2024). Recognizing their universe of facts could not meet the pleading requirements mandated by those cases, Plaintiffs, in briefing before the lower court, argued that the Fourth Circuit's requirements as set forth in *Aziz* and *Est. of Alvarez* were wrong.

Here, under the facts alleged, Defendants lack the requisite *mens rea* to be found liable for aiding-and-abetting under the ATS and international law. Accepting

Plaintiffs' specific factual allegations as true, no alleged assistance by these Defendants had a "substantial effect on the perpetration of" the October 7 attacks, and Plaintiffs cannot plausibly establish Defendants' alleged conduct was completed "with the purpose of facilitating the commission of" the October 7 attacks, especially considering the lack of specific allegations about Defendants' conduct that predate October 7, 2023. There are not even any facts that plausibly support any Defendant had prior knowledge of Hamas's attack, as discussed *supra*. Thus, Plaintiffs' ATS claims fail to state a claim for relief under this Court's binding precedent. Still, this Court need not reach the failure to state a claim analysis for the ATS claims as three independent dismissal grounds exist that deprive the district court of jurisdiction over the Israeli Plaintiffs' claims.

## CONCLUSION

The district court granted Plaintiffs leave to amend in its dismissal order, providing an opportunity to cure the defects in the Amended Complaint. JA028, JA191–192. Plaintiffs declined to file a Second Amended Complaint and instead filed a Notice of Appeal months after the court's amendment deadline. JA028, JA192. As a result, Plaintiffs are bound on appeal to the allegations in the Amended Complaint and have waived any argument for remand based on a request for further leave to amend. Accordingly, justice does not require additional opportunities to amend under Rule 15. Defendants further note Plaintiffs' undue delay in failing to

53

amend within the time allotted and that any amendment would be futile, as evidenced by Plaintiffs' decision not to amend when given the opportunity and by the deficiencies in their ATA and ATS claims discussed, *supra*. Instead, Plaintiffs elected to sink or swim on the law and universe of facts contained within the Amended Complaint. As the district court found, and for the reasons stated above, Plaintiffs' allegations do not plausibly provide relief under the ATA or ATS.

Plaintiffs contemplate a radical expansion of liability under the ATA and ATS unsupported by existing case law. Defendants respectfully ask this Court to reject their invitation and instead join in the well-reasoned decisions nationwide reaching the same conclusion.

This Court should affirm the district court's order granting the Motions to Dismiss filed by Defendants.

Dated: January 22, 2026

/s/ *Patrick J. Crowley*
  Felicity Ann McGrath
  James T. Hittinger
  Patrick J. Crowley
  Kiernan Trebach LLP
  1233 20th St NW Suite 800
  Washington, DC 20036
  Tel: 202-712-7000
  Fax: 202-712-7100
  fmcgrath@kiernantrebach.com
  jhittinger@kiernantrebach.com
  pcrowley@kiernantrebach.com
  *Counsel for WESPAC Foundation, Inc.*

/s/ *Ben Elson*
Ben Elson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070 Fax: 773-235-6699
ben@peopleslawoffice.com
*Counsel for Taher Herzallah and Zarefah Baroud*

/s/ *Christina A. Jump*
George R.A. Doumar
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com
     and
Christina A. Jump
Jump Start Legal Justice Center PLLC
100 N. Central Expy. Suite 537
Richardson, Texas 75080
Tel: (972) 992-5060
cjump@jump-start-legal.com
*Counsel for Osama Abuirshaid, Hatem Bazian and AJP Educational Foundation Inc. d/b/a American Muslims for Palestine*

/s/ *Abdel-Rahman Hamed*
Abdel-Rahman Hamed
Hamed PLLC
1215 31st St NW #25085
Washington, DC 20027
202-888-8846
advocates@hamedlaw.com
*Counsel for National Students for Justice in Palestine*

55

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type - volume, typeface, and type - style requirements of Federal Rule of Appellate Procedure 32(a). This Response Brief contains 12,844 words, excluding the parts of the document exempted by Rule 32(f), and was prepared in fourteen – point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

Dated: January 22, 2026

/s/ *Patrick J. Crowley*
Counsel for WESPAC Foundation

/s/ *Christina A. Jump*
Counsel for Osama Abuirshaid, Hatem Bazian and AJP Educational Foundation Inc. d/b/a American Muslims for Palestine

/s/ *Ben Elson*
Counsel for Taher Herzallah and Zarefah Baroud

/s/ *Abdel-Rahman Hamed*
Counsel for National Students for Justice in Palestine